# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| VELVET A. RODGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:17-cv-864-WTL-DML |
| ) | |
| NANCY BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Velvet A. Rodgers requests judicial review of the final decision of Defendant Nancy Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Rodgers' application for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

## I.    PROCEDURAL HISTORY

Rodgers filed for SSI on October 2, 2013, alleging she became disabled on August 17, 2012. Rodgers' application was denied initially on February 10, 2014, and again upon reconsideration on March 31, 2014. Following the denial upon reconsideration, Rodgers requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Dennis Lyndell Pickett on July 23, 2015, during which Rodgers was represented by counsel. The ALJ issued his decision on September 11, 2015, denying Rodgers' claim. Rodgers requested review by the Appeals Council, and the Appeals Council denied the request for review. Rodgers then filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled, 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citation omitted). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176 (citations omitted).

### III.   ALJ PICKETT'S DECISION

ALJ Pickett determined at step one that Rodgers had not engaged in substantial gainful activity since October 2, 2013, the application date. Record at 13. At steps two and three, the ALJ concluded that Rodgers had the severe impairments of "fibromyalgia, obesity, back pain, and osteoarthritis," *id.*, as well as the non-severe impairments of carpal tunnel syndrome and depression, *id.* at 14. At step four, the ALJ determined that Rodgers had the following residual functional capacity ("RFC"):

> [T]he the claimant has the residual functional capacity to perform light [sic] as defined in 20 []CFR 416.967(b) except occasional climbing ladders, ropes, scaffolds, ramps, stairs; occasional balancing, stooping, kneeling, crouching, crawling.

R. at 16. The ALJ determined that Rodgers was able to perform the past relevant work of cashier, and that "there are other jobs that exist in significant numbers in the national economy that [she] also can perform." R. at 19. Accordingly, the ALJ concluded that Rodgers "has not been under a disability, as defined in the Social Security Act, since October 2, 2013, the date the application was filed." R. at 20.

3

## IV. EVIDENCE OF RECORD

The ALJ's decision, in combination with Rodgers' brief (Dkt. No. 10), aptly sets forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

## V. DISCUSSION

In her brief in support of her Complaint, Rodgers argues that the ALJ failed to properly discuss and analyze Listing 14.09D regarding her fibromyalgia because (1) he did not obtain medical opinions regarding Rodgers' conditions equaling any listing and (2) his analysis of the objective medical evidence was deficient because he failed to address the fluctuating nature of Rodgers' fibromyalgia. Dkt. No. 10 at 4.

A claimant is eligible for benefits if she has a condition that meets or equals an impairment listed in appendix 1 to 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii); (d). "Each listing has a set of criteria which must be met for an impairment to be deemed conclusively disabling." *Kastner v. Astrue*, 697 F.3d 642, 647 (7th Cir. 2012); *see also* 20 C.F.R. § 404.1525(c). If a claimant's impairments meet a medical listing, she will be found disabled. 20 C.F.R. § 404.1520(d). If a claimant's impairments do not meet any medical listing, the ALJ must consider whether the impairments equal any listing. 20 C.F.R. §§ 404.1520(e); 404.1525(c)(5); 404.1526(a). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b); S.S.R. 96-6p at 3 (S.S.A. July 2, 1996), *reinstating* S.S.R. 83-19; and *Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir. 1989)).

Rodgers argues that the ALJ erred by not seeking medical expert opinion on medical equivalency for any listing, and for listing 14.09D in particular, with respect to her fibromyalgia.

Both state agency physicians completed Disability Determination and Transmittal forms and determined that Rodgers' condition did not limit her ability to work, *i.e.*, her condition did not meet or equal a listing. *See* R. at 57-59; 70-72; *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'") (quoting SSR 96-6p). Rodgers argues, however, that "the ALJ should obtain an updated medical opinion from a medical expert where additional evidence is received that could modify the State Agency medical consultant's finding." Dkt. No. 10 at 22. The first review by a state agency physician was signed on February 10, 2014, and the second on March 31, 2014. *See* R. at 57-59; 70-72, respectively. Additional medical evidence was received after those opinions, *see, e.g.*, R. at 203-204; 404-421, including medical evidence related to fibromyalgia, R. at 408-417. No medical expert determined whether Rodgers' impairments met a listing after that additional medical evidence was received.

The ALJ examined the medical evidence, including the medical records from post-March 2014, and determined that Rodgers' fibromyalgia did not meet or medically equal a listing. *See* R. at 15. The ALJ's entire discussion of fibromyalgia meeting a listing follows:

> There is no listing for fibromyalgia, but I have used the closest analogous section, listing 14.09D. The record fails to document repeated manifestations of inflammatory arthritis. I have used the musculoskeletal listing and neurological listing (1.00 and 11.00). However, she is able to ambulate effectively and perform fine and gross movements. Her fibromyalgia is not equivalent to any other listing.

R. at 15.

The ALJ did not refer to the state agency physicians' assessments in his opinion, and no medical expert testified at the hearing. The Commissioner contends that any error with respect to the lack of reference to the agency physicians' opinions is harmless because, on remand, the

issue would be resolved the same way. Dkt. No. 12 at 9. The Commissioner further argues that Rodgers "misstates the instructions of SSR 96-6p," which "actually provide[] that an ALJ must obtain an updated medical opinion from a medical expert '[w]hen additional medical evidence is received **that in the opinion of the administrative law judge . . . may change** the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.'" Dkt. No. 12 at 10 (quoting SSR 96-6p) (emphasis in quotation). Based on this language, the Commissioner infers that the ALJ was not required to obtain an updated medical opinion and argues that "the ALJ reasonably concluded that [Rodgers'] impairments were not equivalent in severity to a listed impairment." *Id.*

An ALJ's opinion, however, is not a substitute for evidence. *Barnett*, 381 F.3d at 671; *see also Engstrand v. Colvin*, 788 F.3d 655, 660-61 (7th Cir. 2015) (determining that ALJ was "inappropriately playing doctor") (internal quotations omitted); *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) (same). Here, the ALJ erred in one of two ways, either by failing to consult a medical expert regarding whether, in light of the post-March 2014 medical evidence, Rodgers' impairments medically equaled a listing, or by failing to discuss the agency physicians' findings that Rodgers' impairments did not meet a listing and to explain in his opinion why the additional medical evidence would not change the agency physicians' findings. In this respect, the ALJ impermissibly substituted his judgment for that of a physician. *Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014) (noting that ALJs must "rely on expert opinions instead of determining the significance of particular medical findings themselves"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings") (citations omitted). Because the ALJ does not mention the agency physicians' opinions and does not acknowledge

6

that the agency physicians did not consider the post-March 2014 medical evidence, he erred in determining that Rodgers' condition did not equal a listing.

On remand, the ALJ is specifically instructed either to obtain a medical expert's opinion regarding whether, considering the medical evidence as a whole, Rodgers meets or equals listing 14.09D, or explain whether he relied on the agency physicians' opinions in reaching his determination that Rodgers' condition did not equal a listed impairment and explain how the post-March 2014 medical evidence fits in to his analysis.

On remand, the ALJ should also address the fluctuating nature of Rodgers' fibromyalgia symptoms.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 3/27/18

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication